we move to the fourth case for the fourth case this morning United States v. Delhorno May it please the court, counsel. Gerardo Gutierrez on behalf of the defendant Ruben Delhorno. Judge, this is a case where we filed a writ of quorum novus asking that the case be reversed because my client, a non-citizen, was facing mandatory deportation under 8 U.S.C. 1227 because he had committed the offense of drug trafficking. In the petition for writ of quorum novus we had asked the district court that there was no proper advisals under Padilla v. Kentucky and more specifically under the Lee v. United States opinion which says that even though a person who pleads guilty to an offense and is more likely or not than to be convicted of that offense, nonetheless if that person wasn't informed by his attorney or in spite of receiving the advisals by the judge then that case can be overturned. Are you arguing here that back in January of 2012 when your client pled guilty that the court was required to admonish him at that point or is your argument just that his lawyer should have and did not the attorney was supposed to admonish him? Obviously the court's advisals at that time did not hold up either under Lee or Chydez but under Padilla it says that the attorneys have to advise him and that was determined to be a new rule by Chydez and subsequently we're here today because A. there was no advisals and B. the attorney failed to admonish him. Now to bring a corbonobus petition you have to establish that there are sound reasons for your client failing to seek relief earlier and as you know he pled guilty in January of 2012 he was sentenced he was transferred to ICE in May of 2017 and he brought this petition in October of 2017. What were the sound reasons and did you argue those to the district court? I did not argue why within five months of being transferred into ICE custody five months. But the five year span. But the five year span I made no argument to the district court why he waited five years while he was in custody in federal custody. Then how can you meet your standard under corbonobus? Judge Ryan the Ryan case here says that the reasonable due diligence is what a reasonable person who is not in incapacitated as a federal detainee which we're claiming a federal detainee is not in the same position of to be able to conduct reasonable due diligence to find an attorney that would focus on this type of work versus an attorney who could in his case he was fighting to have a sentence reduced he sought legal counsel criminal defense counsel to try to get his own six-year sentence or five-year sentence reduced and that didn't go anywhere. The pre-sentence report said if I recall correctly that in essence Mr. DeLarno was aware of immigration dangers and was working to figure to try to stay in the country. That's correct by the time he got around to actual sentencing he had had a conversation although he had had a conversation with pretrial with his probation officer for his pre-sentencing report informing them that he was looking at different possibilities to try to stay in the United States. He he did not say for instance that he knows it was a per se removability under 1227. There was no mention by his attorney who would who said to him emphatically if you plead guilty to this you will be deported. There's a big difference between saying look I've been in this country since I was three years old I have daughters here and I'm gonna try to look for a way where I can stay in the United States when there's no detainer on you at that time. There was no there was no detainer placed on him while he was awaiting fighting for a reduction in sentence. I'm relatively certain that that detainer was placed on towards the end of his incarceration so that by the time that he was ready to look at his out date his out date said this is the date that you get out and not this is the date that ICE is going to come pick you up for per se removability. Is there anything in the record about when the detainer was placed on him Mr. Gutierrez? There's nothing in the record that I see about when the actual detainer was placed on him in in in in federal custody and that's because a lot of times federal custody persons don't get a detainer placed on them until they're getting near the time to get out and then they review the case to see if this person has some substantive defenses. Here he had no substantive defenses and he emphatically stated on his affidavit there's no way I would have pled guilty had I known right then and there 100% I could not remain in the country. If if he had known for instance if his attorney had said look there might be a chance that you can do some kind of withholding of removal if there was any evidence to suggest look you know it's a long shot but yeah there is a way that you might be able to stay in the United States that would have come out at the hearing. Here and to the government's credit they agreed they said you know you need to flesh this out at a hearing to see what was said to the attorney what was known by the attorney and then from that moving forward whether it's more likely than not that that was sufficient that he knew there would be these collateral consequences. I reviewed the record there was a lot of talk about you know losing your firearms losing your certain licenses losing your right to vote in certain cases the entire panoply and this was after Padilla the entire panoply of losses of potential rights but there was no mention of immigration rights. He was cooperating with or at least discussing cooperation with the government right? Yes he was and that was part of that was probably in my opinion and I don't know this for sure and I don't want to state this as a fact but if you're discussing cooperation rights you're also probably discussing how you can obtain an S visa and his attorney would have said you know I don't know anything about S visas but if you contact an immigration lawyer we can see about perhaps getting an S visa so you won't be deported. Why is the case not since Mr. Delorno has been removed from the country? That's a good question judge it's not moot because this is his only way to even have a remote chance of coming back to the United States. Right now he's out of the country in fact this was presented to the 11th Circuit they didn't care they denied his motion to Yes judge. So I mean as earlier questions indicated the writ of quorum nobis is a really unusual remedy. Your theory at this point is that the conviction would be vacated? Yes. And the government would have the option of trying him now many years later? That would be an option yes it's been done before not in this case of course. Are there other cases that have used quorum nobis for Padilla failures to advise? Yes judge the matter of Chydez the matter of Chydez here oh yeah of course sorry yeah sorry I apologize no no that's I don't mean to sound so familiar with Chydez but judge I thought you argued it which I also had had dropped out of the front of the mind Mr. Gutierrez. The first step would be though if the quorum nobis is granted is for a hearing to be conducted to determine if his attorney did advise him correct? That's correct and and and I imagine that we could do that via Skype where because obviously if he doesn't overcome that and there's no then there's no yeah of course so that could be done remotely. Okay. Thank you your honor. Ms. Hoffman. Good morning may it please the court counsel my name is Gail Hoffman and cutting to the chase I believe that this case rises and falls on timeliness and Lee focused on the contemporaneous nature of the assertions that the defendant didn't know which we don't have here we have post hoc assertions that he didn't know and along the lines of timeliness I would also like to indicate that I was wrong before the district court the district court was right I had not focused sufficiently on timeliness so when I made my responded to the defendant's motion at the lower court I hadn't looked at the issue that timeliness issue as closely and the judge was correct in denying the court the quorum nobis petition and now what we have here is the defendant cannot overcome the hurdle of timeliness. But you agree that if he could that a hearing would be required? Correct it would not be vacating the commit the conviction it would be remanding back to the district court for a hearing on that issue. And you're not suggesting in your brief you you quote from the PSR that says the defendant was advised that he's not under deportation at the time but he could be based on the entry of the judgment you're not suggesting that can take the place of his lawyer telling him are you? No I'm not but I am suggesting that six years later he can't overcome the timeliness of that that was a 2255 motion that's not a motion under quorum nobis which really focuses on the finality of a judgment so I agree he if there was if he had any doubts about it there was a time and place to raise it he clearly knew that this was an issue in the PSR Judge Hamilton I believe you mentioned that paragraph 49 says that he's Mr. Del Horno said he's trying to make arrangements to remain in the more likely than not would result in deportation and when you take look at that in conjunction with the sentencing transcript his at that point his thought or it appeared his hope for remaining was an S visa. The PSR did not advise him that there was per se deportation given what he was pleading guilty to should that impact the court's decision? No not no it shouldn't I mean there might have been a place in time where it would have been under a 2255 brought in a timely fashion but six years later no not under a quorum nobis this is a very extraordinary highly unusual remedy typically brought when there's a question of the defendants actual guilt which isn't the case here. How did this happen this was a year after Padilla right? It was it was two years after Padilla actually. Thank you okay so how does everybody in the courtroom miss this? I wish I had an explanation but I don't. Do you agree the case is not moot? I agree it's not moot under the Riedel case in the Ninth Circuit the defendant was in Austria at the time that that quorum nobis was brought and the Ninth Circuit reviewed that case so I don't believe that this the matter is moot here. Does the does the timeliness argument depend upon that entry in the PSR? I think the timeliness argument depends on the entry in the PSR and it also depends upon I think it depends upon the entry in the PSR and also depends upon the sentencing transcript where the attorney clearly made mention that the defendant was deportation. But there's no indication well except that's what I was going to ask you there's no indication that the defendant ever indicated about anything about deportation in this period of time. I'm sorry. The defendant himself did not discuss oh I'm subject to deportation. Well it appeared he did with the PSR writer I mean. How do you mean it appeared? Well when you look at it that he said he's here he that when you look at his statement he's trying to make arrangements to remain in the United States so I think in that come it appeared to me in that a conversation with the PSR writer and that's paragraph 49 that there was some discussion between him and the PSR writer about the consequences of this conviction. The word deportation does not seem to show up anywhere. I mean I understand what you're saying but the actual term deportation doesn't. No I don't think I saw that. And you said something about the sentencing transcript? I didn't see anything in the sentencing transcript where deportation was raised. Not the word deportation but on page 10 of the sentencing transcript the attorney is talking to the judge and saying that his client is seeking a visa to remain in the U.S. He's a resident alien and he had never sought citizenship. But again that's a big leap from saying there's per se deportation. Right. He's not saying that there's per se deportation but I believe that that sentencing transcript suggests that he and his clients have he and his client have discussed the fact that it's very this conviction but the word per se deportation is not there. But again I think that this particular issue I mean all those are valid points but this particular issue rises and falls on the timeliness of when he brought his motion and six years later when Quorum Novus really focuses on finality and it's very it's an extraordinary measure his petition fails for that reason. So unless the court has any further questions I would rest on the government's submission. Thank you. Thank you very much. Thanks to both counsel and the case is taken under advisement.